## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-23-153-RAW |
| | ) | |
| BRIAN KEITH BOWEN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant Brian Keith Bowen, Jr., was indicted for child abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 & 21 Okla. Stat. § 843.5(A), in connection with the injuries sustained by his girlfriend's (J.F.) child, D.F., including a spiral humerus fracture of the right arm. He urges the Court to exclude the proposed testimony of Dr. Christine Beeson, D.O., the child abuse expert identified by the Government, on the grounds that her opinions do not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See generally* Fed. R. Evid. 702. The Court referred Defendant's Motion for Hearing Re: *Daubert/Kumho Tire* Issues [Docket No. 33] to the undersigned Magistrate Judge for a hearing and final disposition pursuant to 28 U.S.C. § 636(b)(1) [Docket No. 34]. Defendant subsequently filed his own Notice of Intent to Offer Expert Testimony [Docket No. 46] of Dr. Robert Rothfeder, M.D., and the Government objected to the testimony and alternatively requested a *Daubert* hearing [Docket No. 49]. The Court

likewise referred this matter to the undersigned Magistrate Judge for final disposition pursuant to 28 U.S.C. § 636(b)(1) [Docket No. 50].

The undersigned Magistrate Judge conducted an evidentiary hearing on Tuesday, May 7, 2024 [Docket No. 68]. Both proposed experts testified at the hearing; Dr. Beeson testified live on behalf of the Government and Dr. Rothfeder testified by video on behalf of Defendant. Having previously granted the parties' requests for hearing, the Court now finds that the remaining portion of Defendant's Motion for Hearing Re: *Daubert/Kumho Tire* Issues [Docket No. 33] as to the Government's Notice of Intent to Offer Expert Testimony [Docket No. 23] should be DENIED and the Government's Objection to Defendants' Expert Witness or Alternatively to Conduct a Daubert Hearing Prior to Allowing His Testimony [Docket No. 49] should be OVERRULED for the reasons set forth below.

## I.    LEGAL STANDARD UNDER *DAUBERT* & FRE 702

A witness who is qualified as an expert by knowledge, skills, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Each party has the burden to show the evidence they are propounding is admissible under Rule 702. *See, e. g., United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc). However, the Court notes the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony.'" *Daubert*, 509 U.S. at 588 (*quoting Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)). "Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, and the trial court has broad discretion in deciding whether to admit or exclude expert testimony." *United States v. DeLeon*, 2021 WL 4909981, at *15 (D.N.M. Oct. 21, 2021) (citations omitted). And the "fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge.[] Thus, within the scope of the rule are not only experts in the strictest sense of the word, *e.g.*, physicians, physicist, and architects, but also the large group sometimes called 'skilled' witnesses[.]" Advisory Committee Notes to Fed. R. Evid. 702, 1972 Proposed Rules. "And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire*, 526 U.S. at 149 (*quoting Daubert*, 509 U.S. at 592).

"Before considering whether an expert's testimony is reliable or helpful to the jury, 'the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion.'" *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (*quoting Nacchio*, 555 F.3d

at 1241).  Only then must a Court "satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). *See also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) ("Fed. R. Evid. 702 imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'") (*quoting Daubert*, 509 U.S. at 589).

In "its gatekeeping role, the district court must make specific findings on the record so that the appellate court can determine if it carefully reviewed the objected-to expert testimony under the correct standard." *United States v. Stevenson*, 2022 WL 4368466, at *1 (E.D. Okla. Sept. 21, 2022) (*citing, inter alia*, *United States v. Cushing*, 10 F.4th 1055, 1079 (10th Cir. 2021)).  "Reliability is about the reasoning and methodology underlying the expert's opinion.  Relevance is about whether the expert testimony will assist the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility." *United States v. Wofford*, 766 Fed. Appx. 576, 581 (10th Cir. 2019) (internal citations and quotations omitted).

Factors for evaluating whether an expert's scientific testimony is reliable include: (i) whether a theory or technique can be tested, (ii) whether it has been subject to peer review and publication, (iii) the known or potential rate of error, and (iv) whether such a theory or method has achieved "general acceptance" in the scientific community. *Daubert*, 509 U.S. at 593-594.  Other factors helpful in identifying whether evidence is sufficiently

reliable are: (i) whether an expert is offering opinions arising out of research conducted independent of the litigation, or developed expressly for purposes of testifying, *see Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1995); (ii) whether an expert unfairly extrapolates from an accepted premise to an unfounded conclusion, *see General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); (iii) whether an expert adequately accounts for obvious alternative explanations, *see Claar v. Burlington N.R.R.*, 29 F.3d 499, 502-503 (9th Cir. 1994); (iv) whether an expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting[,]" *see Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); and (v) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give, *see Kumho Tire*, 526 U.S. at 150. Advisory Committee Notes to Fed. R. Evid. 702, 2000 Amendments. These lists are not exclusive, as the Supreme Court reiterated in *Kumho Tire*: "[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence . . . the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." 526 U.S. at 150 [internal quotation omitted]. Further, the Tenth Circuit has stated that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances." *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

In contrast, "[t]he credibility of witnesses is generally not an appropriate subject for

expert testimony." *United States v. Toledo,* 985 F.2d 1462, 1470 (10th Cir. 1993). *See also United States v. Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) ("[O]ur court has clearly held that 'credibility [i]s for determination by the jury,' and '[a]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility[.]'") (*quoting United States v. Samara,* 643 F.2d 701, 705 (10th Cir. 1981) (quotation omitted)). And this applies to expert testimony as to the credibility (or lack thereof) of a defendant as well. *See Id.*, at 1260-1261 ("[T]he government argues that the foregoing Tenth Circuit cases establish a rule that it is impermissible for an expert to vouch *for* the credibility of a witness, but say nothing about an expert's opinion that a defendant is *not* credible. We disagree."). Moreover, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

## II.    DR. CHRISTINE BEESON, D.O.

Examining or treating physicians like Dr. Beeson are often referred to as hybrid fact/expert witnesses, given the combined nature of their experiences treating a person along with their possession of training and skills necessary for being a physician. "Both Federal Rules of Evidence 701 and 702 distinguish between expert and lay testimony, not between expert and lay witnesses. Indeed, it is possible for the same witness to provide both lay and expert testimony in a single case." *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (citation and footnotes omitted). For instance, "a treating physician

still acts as a lay witness [for purposes of the Federal Rules of Evidence] when testifying to his treating or caring for a patient." *Walker v. Spina*, 2019 WL 145626, at \*19 (D.N.M. Jan. 9, 2019) (citation omitted).  However, "a treating physician testifying as a lay witness cannot testify to medical opinions regarding causation, because such opinions require knowledge derived from previous professional experience[, which] falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Id.*, at \*21 (emphasis added).  "A treating physician's opinions regarding diagnosis of a medical condition is almost always expert testimony, because diagnosis requires judgment based on scientific, technical, or specialized knowledge in almost every case[.]  Diagnosing that a patient suffers from a complicated medical condition is expert testimony[.]" *Montoya v. Sheldon*, 286 F.R.D. 602, 614 (D. N.M. 2012).

Dr. Beeson testified at the hearing on May 7, 2024, that she completed medical school in 2016 and a residency in general pediatrics in 2019, followed by a fellowship in Child Abuse Pediatrics that concluded in 2022.  She was a pediatric hospitalist at Cherokee Nation W.W. Hastings Hospital from 2022 until April 1, 2024, at which time she went to work for the University of Oklahoma Child Advocacy Network.  She is Board Certified in both general pediatrics as well as Child Abuse and Neglect.  She has evaluated thousands of children for suspected child abuse.  *See also*, Docket No. 23, Ex. 1 ("Curriculum Vitae").  Defendant has no objection to her qualifications.  Accordingly, the Court finds Dr. Beeson "is qualified by knowledge, skill, experience, training, or education to render an opinion." *Gutierrez de Lopez*, 761 F.3d at 1136.  Furthermore, Dr. Beeson's expertise as a Board

-7-

Certified physician in child abuse and neglect, who also treated D.F., is pertinent to this case because the government charged Defendant with child abuse.

While not objecting to Dr. Beeson's qualifications, Defendant objects to the reliability of the opinions Dr. Beeson proffered at the *Daubert* hearing. Prior to her testimony and diagnosis for D.F., Dr. Beeson reviewed D.F.'s medical history and records, spoke to D.F.'s mother and an Indian Child Welfare worker, and conducted a head-to-toe physical examination of D.F. Under Fed. R. Crim. P. 16, the Government was not required to submit an expert report detailing Dr. Beeson's methodology. At the hearing, Dr. Beeson testified as to her general process for evaluating children for suspected child abuse, as well as her physical examination findings upon examination of D.F., including bruising over multiple planes of his body and a right arm splint. Based on the entirety of her exam, including the constellation of injuries presented, Dr. Beeson diagnosed child physical abuse.

Defendant challenges Dr. Beeson's diagnosis, asserting that it is based on the opinions of D.F.'s mother, J.F., without any statements from Defendant as part of her assessment and diagnosis. The implication here is that Dr. Beeson is vouching for J.F.'s credibility. Dr. Beeson's testimony is not, however, based solely on J.F.'s statements, but upon D.F.'s entire medical record, her physical examination of D.F., and statements from both J.F. and the Indian child welfare worker. This "methodology," in combination with Dr. Beeson's substantial experience as a Board Certified pediatrician and specialist in Child Abuse and Neglect is sufficient to determine that her opinions are reliable. This Court has

previously held that such testimony is permissible and does not impermissibly vouch for a victim or parent's statements. *See United States v. Menees*, 2023 WL 127032, at *3 (E.D. Okla. Jan. 6, 2023) ("Dr. Conway's conclusion that K.M. suffered child abuse and neglect is not based solely on K.M.'s statements. Rather, it is based on, *inter alia*, her review of her records related to K.M.'s medical care, her knowledge regarding K.M.'s injuries, and her knowledge of K.M.'s pediatric history and developmental milestones. Accordingly, it is not readily apparent, based on Plaintiff's notice, that Dr. Conway will testify in a manner that impermissibly vouches for K.M.'s credibility."). *Compare with United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) ("[I]f Dr. Ornelas' opinion was largely based on crediting the girls' account, whether disclosed to her or others, she was essentially vouching for their truthfulness. In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702.").

While Defendant is entitled to cross-examine Dr. Beeson as to her examinations, methodology, and analysis, Dr. Beeson will be permitted to offer these opinions. *United States v. Woods*, 2022 WL 989477, at *3 (N.D. Okla. April 1, 2022). *See also Gutierrez de Lopez*, 761 F.3d at 1136 ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations."). "[W]hen experts employ established methods in their

usual manner, a district court need not take issue under *Daubert*[.]." *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009).

Dr. Beeson's testimony will assist the trier of fact and has significant probative value, which is not outweighed by any danger of unfair prejudice. "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.*, 761 F.3d at 1136 (*quoting United States v. Garcia*, 635 F.3d 472, 476-477 (10th Cir. 2011)); *see also Rodriguez-Felix*, 450 F.3d at 1123 ("[T]he court will still consider other non-exclusive factors to determine whether the testimony will assist the trier of fact: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. In essence, the question is 'whether [the] reasoning or methodology properly can be applied to the facts in issue.'") [internal citations omitted] (*quoting Daubert*, 509 U.S. at 593). Having considered these factors, the Court finds that the proposed testimony by Dr. Beeson would be helpful to the jury in this case, as such issues are not within the common knowledge of a prospective juror. Dr. Beeson is therefore qualified as an expert, as well as a fact witness, in this case, and her testimony is both reliable and relevant.

### III.    DR. ROBERT ROTHFEDER

The Government challenges Dr. Rothfeder's qualifications, as well as the reliability of his testimony. Dr. Rothfeder's Curriculum Vitae*, see* Docket No. 46, Ex. 2, and his

testimony at the *Daubert* hearing reflect that he became a Medical Doctor in 1974, completed an Internal Medicine residency in 1977, and was thereafter Board Certified in Emergency Medicine and Board Qualified in Internal Medicine. He was an ER physician from 1977-2006, and also had a private practice from 1991-2013, specializing in evaluation and treatment of patients with traumatic injuries. Additionally, Dr. Rothfeder earned a Juris Doctor in 1984, and was Of Counsel at a law firm from 1985-2019. At the *Daubert* hearing, Dr. Rothfeder indicated that he has testified as an expert and/or treating physician since he graduated law school, but with more frequency from 2006-2014. The majority of his consult cases were as to child abuse in the criminal or custody arena, which he generally subdivided into brain injury cases and unexplained fracture cases such as the present case. He estimated he has been deposed and/or testified in hundreds, possibly as many as 500, child abuse cases, including 50 to 100 in the last ten years. Dr. Rothfeder's CV lists 15 cases but does not include case numbers or dates for reference. Docket No. 46, Ex. 2. At the hearing, Dr. Rothfeder agreed that he is Board Certified in neither pediatrics nor child abuse, and that he has not practiced medicine since 2013, nor has he published any articles himself on the topics of child abuse or neglect. He credits his experience to staying current with medical literature and years reviewing medical records including x-rays, as well as his own lengthy ER experience.

The Government contends that while Dr. Rothfeder may be an expert in emergency medicine, he is not qualified in this case because he is not Board Certified in pediatrics or child abuse, he has not treated patients in ten years and only did so after 2006 in anticipation

of litigation, he is not current in this training, and he has not published in this area. "[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). However, "'the issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Hoog v. Dometic Corp.*, 2024 WL 1234951, at *5 (W.D. Okla. Mar. 22, 2024) (quoting *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-1093 (W.D. Okla. 2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). "[C]ourts consistently have recognized that expert testimony need not be based solely upon scientific training[, specific certification,] or education; rather, an expert may be qualified in various ways." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 2007 WL 9734358, at *4 (D.N.M. Mar. 28, 2007). Rule 702 explicitly provides that expert status may be based on "knowledge, skill, *experience*, training, or education." Fed. R. Evid. 702 (emphasis added). Indeed, "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. 2004) (although an expert's *qualification* is not a guarantor of the discrete requirement of *reliability*).

Dr. Rothfeder has years of experience in reviewing medical records related to charges of child abuse, specifically in relation to fractures, as well as decades of treatment of these injuries and years of testifying about them as an expert. *Vox Mktg. Grp., LLC v.*

-12-

*Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1144-1145 (D. Utah 2021) ("Although '[a]n expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert,' the expert may rely upon another expert's opinion if 'the facts or data relied upon [are of] the kind that 'experts in the particular field would reasonably rely on . . . in forming an opinion on the subject.''" (quoting *Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814, 820 (10th Cir. 2010) and *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (second alteration in original) (quoting Fed. R. Evid. 703)).  "This distinguishes this case from *Sittig v. Louiville Ladder Group LLC*, 136 F. Supp. 2d 610 (W.D. La. 2001), where deposition testimony revealed the experts knew little about ladders, and *Ralston* where the expert admitted to having no experience in the areas the Plaintiff sought to offer her testimony." *Heer v. Costco Wholesale Corp.*, 2014 WL 11621683, at *3 (D.N.M. Jan. 13, 2014).  The Court therefore finds that Dr. Rothfeder "is qualified by knowledge, skill, experience, training, or education to render an opinion." *Gutierrez de Lopez*, 761 F.3d at 1136; *see also Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) ("That rule [702] and the committee's note thereto indicate clearly that one may qualify as an expert by 'knowledge, skill, experience, training, or education' and that the 'expert' as such should not be required to satisfy an overly narrow test of his own qualifications.").  Furthermore, Dr. Rothfeder's expertise is pertinent to this case because the government charged defendant with child abuse, and he offers an alternative possibility.  Any challenges to Dr. Rotherfeder go to weight of the testimony, rather than admissibility.  *See Rivera v. Volvo Cars of N. Am.,*

-13-

*LLC*, 2015 WL 11120738, at *4 (D.N.M. June 25, 2015) ("Any alleged flaws in Dr. Biffl's analysis of A.R.'s current condition or future prognosis go to the weight of her testimony, not its admissibility.") (citing *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1251 (D.N.M. 2013) ("*Daubert* requires that factual determinations and flaws in application of generally reliable methodology are to be handled by cross-examination at trial and presentation of contrary evidence.").

Prior to providing his written opinion, Dr. Rothfeder reviewed: (i) medical records for D.F. from his birth to the time of the fracture, including x-rays showing the fracture, which also included Dr. Beeson's exam notes and findings. Additionally, Dr. Rothfeder testified that he stays current by researching issues of child abuse and neglect, including medical literature, records, and x-rays. He testified that he reviews the medical literature to educate himself and that he also has the benefit of hearing other experts testify at trials. His expert report, Docket No. 48, Ex. 1, also attached five relevant medical journal articles, Docket No. 69.[1] To the extent the Government is challenging the sufficiency of the facts or data relied upon by Dr. Rothfeder, the Court finds that Defendant has met his burden here. Upon review of Dr. Rothfeder's testimony and taking note of the evidence considered, it is clear that he possessed sufficient facts and data to offer the opinion that "humerus fracture is not inconsistent with an accidental mechanism, and that non

---

[1] At the *Daubert* hearing, Defendant's counsel made an oral request to file a supplement to the original Notice of Intent to Offer Expert Testimony [Docket No. 46] and Supplement containing Dr. Rothfeder's report [Docket No. 48] as the journal articles were not originally attached. The the Court granted the motion at the hearing [Docket No. 68], and Defendant then supplemented [Docket No. 69].

-14-

accidental trauma as the cause of the fracture can't be summarily assumed." Docket No. 48, Ex. 1, p. 1.   Additionally, Dr. Rothfeder's testimony is fairly generalized, in that "[a] spiral humerus fracture is not inconceivable in an accidental fall." Docket No. 48, Ex. 1, p. 2. *See Heer*, 2014 WL 11621683, at *3 ("Unlike *Ralston*, Mr. Stolz's testimony is limited to generalities, which are well within the confines of his subject area. While this generality impacts the reliability of his testimony, the Court determines that it supports Mr. Stolz's qualification to give such testimony.").

Furthermore, Dr. Rothfeder's opinion was the product of reliable principles that were applied to the facts and evidence in this case as demonstrated by the medical journal articles attached to Dr. Rothfeder's opinions. *See* Docket No. 69.[2]   Dr. Rothfeder's opinion thus was formed out of his skill set and knowledge base from an acknowledged medical subspecialty.  When testifying about the D.F.'s injuries, his opinion that "[a] spiral humerus fracture is not inconceivable in an accidental fall" was based on scientific journals and his own experience and training as a physician.   "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (*citing* Rules 701, 702, and 703).

---

[2] Brian Shaw et al., *Humerus Shaft Fractures in Young Children:  Accident or Abuse?*, J. Petadr. Orthop. Vol. 17(3), pp. 293-297 (May/June 1997); Carole Jenny, *A Possible Mechanism for Accidental Humeral Fractures in Infants*, Pediatr. Radiol. (Editorial) (June 18, 2014); John M. Somers et al., *Humeral Fracture in Non-Ambulant Infants—a Possible Accidental Mechanism*, Pediatr. Radiol. (Feb. 26, 2014) (published online); Lt. Col. Kent P. Hymal, MC, USAF, *Abusive Spiral Fractures of the Humerus:  A Videotaped Exception*, Arch. Pediatr. Adolesc. Med., vol. 150, pp. 226-227 (Feb. 1996); Lydia Forestier-Zhang & Nick Bishop, *Bone Strength in Children: Understanding Basic Bone Biomechanics*, Arch Dis Child Educ Pract Ed (published online Aug. 12, 2015).

Furthermore "*Daubert* generally does not[] regulate the underlying facts or data that an expert relies on when forming her opinion." *United States v. Lauder*, 409 F.3d 1254, 1264 & n.5 (10th Cir. 2005). "In other words[,] when experts employ established methods in their usual manner, a district court need not take issue under *Daubert;* however, where established methods are employed in new ways, a district court may require further indications of reliability." *Tyson Foods*, 565 F.3d at 780.

As with Dr. Beeson, the Court finds that Dr. Rothfeder's proposed testimony will assist the trier of fact. *See Gutierrez de Lopez*, 761 F.3d at 1136 (*quoting Garcia*, 635 F.3d at 476-477); *see also Rodriguez-Felix*, 450 F.3d at 1123 (*quoting Daubert*, 509 U.S. at 593). Dr. Rothfeder's proposed testimony would be helpful to the jury in this case, as such issues are not within the common knowledge of a prospective juror. *See Gutierrez de Lopez*, 761 F.3d at 1136 ("Ultimately [] expert testimony is admissible under Rule 702(a) if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context."). Notably, Dr. Rothfeder's expert report indicates "that bone strength in growing children is not uniform across the population," Docket No. 48, Ex. 2, p. 2, while Dr. Beeson testified that bony fragility is pretty consistent in typically developing children, and specifically that there was no indication D.F. demonstrated bony fragility. The Government is entitled, however, to cross-examine Dr. Rothfeder as to his methodology and analysis. *Woods*, 2022 WL 989477, at *3 ("Defendant may cross-examine Dr. Hines on the specifics of her examination and analysis."). In any event, "[d]oubts about whether an expert's testimony will be useful should generally be resolved

in favor of admissibility unless there are strong factors such as time or surprise favoring exclusion." *Gutierrez de Lopez*, 761 F.3d at 1136. Here, the Court finds that Dr. Rothfeder's expert testimony is reliable and relevant, and he should therefore be permitted to testify as an expert as to the proffered opinions.

### C. Conclusion

In summary, the parties' requests for *Daubert* hearing have previously been GRANTED. *See* Docket Nos. 33, 34-35, 49-51, 56, 68. The remaining portion of Defendant's Motion for Hearing Re: *Daubert/Kumho Tire* Issues [Docket No. 33] as to the Government's Notice of Intent to Offer Expert Testimony [Docket No. 23] is DENIED. The Government's Objection to Defendants' Expert Witness or Alternatively to Conduct a Daubert Hearing Prior to Allowing His Testimony [Docket No. 49] is hereby OVERRULED. *See* 28 U.S.C. § 636(b)(1)(A).

IT IS SO ORDERED this 9th day of May, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**